IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

|  |  |
|---|---|
| LEQUITA R. WHITFIELD, *on behalf of herself and all others similarly situated,* | |
| *Plaintiff,* | CIVIL ACTION NO. |
| v. | 5:24-cv-00153-TES |
| SELENE FINANCE LP, | |
| *Defendant.* | |

## ORDER

Plaintiff Lequita R. Whitfield filed this action[1] alleging that Defendant Selene

Finance, LP, violated federal and state law by using "unlawful and unfair debt

collection practices to collect upon residential consumer mortgage loans." [Doc. 11, ¶ 1].

The Court previously denied Selene's first Motion to Dismiss [Doc. 4] as moot in light of

Plaintiff's Amended Complaint [Doc. 11]. *See* [Doc. 12]. Now before the Court is

Selene's second Motion to Dismiss [Doc. 17].

## BACKGROUND[2]

The facts are quite simple: On May 4, 2004, Plaintiff obtained a mortgage for a

---

[1] Plaintiff intends to represent all Georgia residents in the Middle District who received a similar letter from Selene. [Doc. 11, ¶ 117].

[2] The following factual background is taken from Plaintiff's Amended Complaint and all facts are accepted as true for purposes of the instant Motion. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 572 (2007).

home in Perry, Georgia, through Novastar Mortgage, Inc. [Doc. 11, ¶ 73]. At some point, Selene obtained the servicing rights for Plaintiff's mortgage. [*Id.* at ¶ 95]. Plaintiff's mortgage went into a "state of default," and, after Plaintiff became "more than 45 days delinquent," Selene sent her a "GA Final Letter to coerce and intimidate her into paying the entire default amount of the loan."[3] [*Id.* at ¶¶ 106–108]. After receiving this letter, Plaintiff felt "anxious and terrified." [*Id.* at ¶ 112]. More specifically, "Plaintiff thought she was going to have a heart attack, as she was afraid that Selene was going to come foreclose on her house at any moment if she was not able to make her payment by their prescribed deadline." [*Id.* at ¶ 113]. Plaintiff then called Selene, and eventually borrowed money from her brother, but Plaintiff "did not ultimately have to use the funds borrowed from her brother." [*Id.* at ¶ 115].

Now, to the relevant documents. First, the Security Deed's acceleration clause reads, in pertinent part:

> Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument[.] The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property . . . If the default is not cured on or before the date

---

[3] The letter created "a false sense of urgency by threatening to accelerate the entire indebtedness of a consumer's loan if the total amount is not received on or before the date which is 35 days from the date of the Final Letter[.]" [*Id.* at ¶ 43]. However, under Selene's normal practice and federal regulations, *see* 12 C.F.R. § 1024.41, "a borrower need only keep their loans less than 120 days past due to avoid acceleration and foreclosure." [*Id.*]; *see also* [*id.* at ¶ 53]. Therefore, "[i]f a borrower fails to meet the deadline outlined in the Final Letters, nothing happens at all." [*Id.* at ¶ 44].

specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale granted by Borrower and any other remedies *permitted by Applicable Law.*

[Doc. 11-3, ¶ 22 (emphasis added)].

The GA Final Letter[4] provides as follows:

Selene Finance LP ("Selene") holds the Note and the Security Deed to the above-referenced property and services the above-referenced loan on behalf of the current owner of your loan: U.S. Bank Trust National Association, not in its individual capacity but solely as owner trustee for RCF 2 Acquisition Trust. Selene, on behalf of the owner and holder of your mortgage loan, and *in accordance with* the referenced Security Deed and *applicable state laws,* provides you with final notice of the initiation of proceedings to exercise a power of sale. The mortgage loan associated with the referenced Deed of Trust/Mortgage is in default for failure to pay amounts due.

To cure this default, you must pay all amounts due under the terms of your Note and Security Deed.

. . .

If you have not cured the default within thirty-five (35) days of this notice, Selene may accelerate the maturity date of the Note and declare all outstanding amounts under the Note immediately due and payable, *as permitted by applicable state and federal law.* Your property that is collateral for the Note may then be scheduled for foreclosure sale in accordance with the terms of the Security Deed and applicable state laws.

[Doc. 11-1, pp. 4–5 (emphasis added)].

Plaintiff alleges that this letter violated the Fair Debt Collection Practices Act, 15

---

[4] The Court may consider the GA Final Letter because Plaintiff incorporated the document into her Amended Complaint. *See Johnson v. City of Atlanta*, 107 F.4th 1292, 1300 (11th Cir. 2024).

U.S.C. § 1692 ("FDCPA"), along with the Georgia Fair Business Practices Act, O.C.G.A. § 10-1-390 ("GFBPA"). *See generally* [Doc. 11].

## LEGAL STANDARD

### I.    Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) provides for dismissal of a complaint for lack of subject matter jurisdiction. Courts lack subject matter jurisdiction when a plaintiff fails to establish the "irreducible constitutional minimum" of standing. *Spokeo Inc. v. Robins*, 578 U.S. 330, 338–39 (2016).

Motions to dismiss for lack of subject matter jurisdiction "can be based upon either a facial or factual challenge to the complaint." *McElmurray v. Consol. Gov't of Augusta-Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 2007) (citing *Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir. May 1981)). Where the attack on the complaint is facial, "the plaintiff is left with safeguards similar to those retained when a Rule 12(b)(6) motion to dismiss for failure to state a claim is raised." *Id.* (quoting *Williamson*, 645 F.2d at 412). A facial attack on a complaint requires a court to look and see if the plaintiff "sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990) (quoting *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980)). "A 'factual attack,' in contrast, challenges the existence of subject matter jurisdiction irrespective of the pleadings, and extrinsic evidence may be considered."

*Kennedy v. Floridian Hotel, Inc.*, 998 F.3d 1221, 1230 (11th Cir. 2021) (citing *Lawrence*, 919 F.2d at 1529). When considering a factual attack, this Court "is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id.* (quoting *Lawrence*, 919 F.2d at 1529).

II.    **Rule 12(b)(6)**

When ruling on a motion under Federal Rule of Civil Procedure 12(b)(6), district courts must accept the facts set forth in the complaint as true. *Twombly*, 550 U.S. at 572. A complaint survives a motion to dismiss only if it alleges sufficient factual matter (accepted as true) that states a claim for relief that is plausible on its face. *McCullough v. Finley*, 907 F.3d 1324, 1333 (11th Cir. 2018) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009)). In fact, a well-pled complaint "may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (citations omitted).

Although Federal Rule of Civil Procedure 8 does not require detailed factual allegations, it does require "more than [ ] unadorned, the-defendant-unlawfully-harmed-me accusation[s]." *McCullough*, 907 F.3d at 1333 (citation omitted). To decide whether a complaint survives a motion to dismiss, district courts are instructed to use a two-step framework. *Id.* The first step is to identify the allegations that are "no more than mere conclusions." *Id.* (quoting *Iqbal*, 556 U.S. at 679). "Conclusory allegations are not entitled to the assumption of truth." *Id.* (citation omitted). After disregarding the

conclusory allegations, the second step is to "assume any remaining factual allegations are true and determine whether those factual allegations 'plausibly give rise to an entitlement to relief.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679).

Furthermore, a complaint attacked by a 12(b)(6) motion is subject to dismissal when it fails to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. "A plaintiff must plead more than labels and conclusions or a formulaic recitation of the elements of a cause of action." *McCullough*, 907 F.3d at 1333 (internal quotations omitted); *see also Twombly*, 550 U.S. at 555. "To be sure, a plaintiff may use legal conclusions to structure his complaint, but legal conclusions 'must be supported by factual allegations.'" *McCullough*, 907 F.3d at 1333 (quoting *Iqbal*, 556 U.S. at 679). While courts, in ruling on a motion to dismiss, must take all factual allegations in the complaint as true; they are not bound to accept a legal conclusion couched as a factual allegation. *Iqbal*, 556 U.S. at 678. Courts must "identify conclusory allegations and then discard them—not 'on the ground that they are unrealistic or nonsensical' but because their conclusory nature 'disentitles them to the presumption of truth.'" *McCullough*, 907 F.3d at 1333 (quoting *Iqbal*, 556 U.S. at 681).

The issue to be decided when considering a motion to dismiss is not whether the claimant will ultimately prevail, but "whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds by Davis v. Scheuer*, 468 U.S. 183 (1984). The factual allegations in a complaint

"must be enough to raise a right to relief above the speculative level" and cannot "merely create[] a suspicion of a legally cognizable right of action." *Twombly*, 550 U.S. at 545, 555. Finally, complaints that tender "'naked assertion[s]' devoid of 'further factual enhancement'" will not survive against a motion to dismiss. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (alteration in original). Stated differently, the complaint must allege enough facts "to raise a reasonable expectation that discovery will reveal evidence" supporting a claim. *Twombly*, 550 U.S. at 556.

## DISCUSSION

### I.    FDCPA

Via its Motion to Dismiss, Selene argues that Plaintiff's Amended Complaint—as to her FDCPA claims—is flawed in three respects. *See generally* [Doc. 17-1]. First, Selene asserts that Plaintiff lacks standing. Second, Selene argues that the GA Final Letter did not violate the FDCPA. And, lastly, Selene argues that Plaintiff failed to comply with the required notice-and-cure provision of her security instrument.[5]

#### a.    *Standing*

Selene first challenges Plaintiff's standing to bring this action. In Selene's view, Plaintiff's Amended Complaint fails to establish a sufficient injury-in-fact because she did not "pay money or take any *detrimental* action based on the alleged deceptive or

---

[5] The Court addresses this argument following the discussion of both the FDCPA and GFBPA claims because it applies to both equally.

unfair statements in the notice." [*Id.* at p. 9]. Plaintiff contends her allegations of experiencing "significant emotional injury" suffice to give her standing. [Doc. 20, p. 5].

Selene primarily relies on *Trichell v. Midland Credit Management, Inc.*, 964 F.3d 990 (11th Cir. 2020), where the Eleventh Circuit held there was no "injury in fact when [the plaintiffs] received allegedly misleading communications that did not mislead them." Put another way, the Circuit ruled that a simple risk or informational injury is insufficient—under the FDCPA—to establish standing. *Id.* at 998.

Now, to be candid, Article III standing is a touch murky at present. *See Sierra v. City of Hallandale Beach, Fla.*, 996 F.3d 1110, 1116 (11th Cir. 2021) (Newsom, J., concurring). And, the Eleventh Circuit "[has] not yet decided in a published opinion whether emotional distress alone is a sufficiently concrete injury for standing purposes." *Toste v. Beach Club at Fontainebleau Park Condo. Ass'n, Inc.*, No. 21-14348, 2022 WL 4091738, at *4 (11th Cir. Sept. 7, 2022). But, a throughline of standing jurisprudence is clear: "fears of hypothetical future harm[s]" do not provide Article III standing. *See Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917, 926 (11th Cir. 2020).

As the Supreme Court put it, plaintiffs "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013). Indeed, "[e]motional distress is not some unassailable allegation bestowing standing on any FDCPA plaintiff sharp enough to utter the phrase. Article III's limitations aren't hollow

8

tokens brushed aside by magic words accompanying a statutory violation." *Crowder v. Andreu, Palma, Lavin & Solis, PLLC*, No. 2:19-CV-820-SPC-NPM, 2021 WL 1338767, at *5 (M.D. Fla. Apr. 9, 2021).

If a plaintiff relies on "intangible harms" for standing, there must be a "close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 424 (2021). That means for FDCPA claims, which resemble fraud claims, a plaintiff must show "justifiable reliance and actual damages." *Trichell*, 964 F.3d at 998. Under such a standing theory, plaintiffs may not "recover for representations that they contend were misleading or unfair . . . without proving even that they relied on the representations, much less that the reliance caused them any damages." *Id.*[6]

So, what does that mean for Plaintiff? Well, by her own allegations, she took no concrete action based on the letter. Sure, the Court accepts as true that she experienced

---

[6] *See also Graves v. Foulger-Pratt Cos., LLC*, No. 121CV01367MSNWEF, 2023 WL 2720795, at *9 (E.D. Va. Mar. 30, 2023) (concluding that standing must derive from a harm traditionally recognized in American courts, and finding that under the FDCPA, the plaintiff "fail[ed] to plead any factual allegations that she relied on the fraudulent misrepresentations in any way to her detriment."); *Farmer v. Optio Sols., LLC*, No. 22-CV-00907-EMC, 2022 WL 3974261, at *5 (N.D. Cal. Aug. 31, 2022) ("Plaintiff concedes she was not in a position to pay off the loan. Thus, she does not, and cannot, allege either reliance or resulting pecuniary loss. Accordingly, Plaintiff has not shown a 'close relationship' between the alleged emotional harm and the harms that traditionally provided a basis for lawsuit.").

emotional distress,[7] called Selene,[8] and borrowed money from her brother (that she never used to pay Selene). [Doc. 11, ¶¶ 111, 115]. But, taken together, that does not match the allegations of harm other courts have found to be sufficiently concrete. *See, e.g.*, *Losch v. Nationstar Mortg. LLC*, 995 F.3d 937, 943 (11th Cir. 2021). For example, she didn't make a payment or allege that she "suffered any other pecuniary loss because she received the [l]etters." *Suazo v. Resurgent Cap. Servs. LP*, No. 21-24016-CIV, 2023 WL 6037421, at *4 (S.D. Fla. Sept. 15, 2023).

Even more, Plaintiff's alleged harm "dissipated before [she] filed the complaint[]," and this Court "must assess Article III standing as of when a complaint is filed." *Trichell*, 964 F.3d at 1003. Here, Plaintiff's Amended Complaint "explain[s] perfectly well why the collection letters were arguably misleading"; thus, the Amended Complaint "did not, and could not, make any allegation that [Plaintiff] was at risk of being misled in the future." *Id.*

In sum, because Plaintiff "didn't make a payment, promise to do so, or other-

---

[7] Plaintiff's emotional harm and anxiety-based "injuries" also arguably face another Article III problem: traceability. As the Sixth Circuit put it, "the cause of [the alleged] anxiety falls squarely on [Plaintiff] because [s]*he* chose not to pay h[er] debts—and now fears the consequences of h[er] delinquency. So even if anxiety is a cognizable injury—and we have our doubts—the anxiety that [Plaintiff] alleges is not traceable to anyone but h[er]." *Buchholz v. Meyer Njus Tanick, PA*, 946 F.3d 855, 867 (6th Cir. 2020); *see also Garland v. Orlans, PC*, 999 F.3d 432, 441 (6th Cir. 2021).

[8] This is not a "legally cognizable harm[]. Making a call to a debt collector is not closely related to an injury that our legal tradition recognizes as providing a basis for a lawsuit." *Pierre v. Midland Credit Mgmt., Inc.*, 29 F.4th 934, 939 (7th Cir. 2022).

wise act to her detriment[9] in response to anything in or omitted from the letter," she

failed to establish a sufficient injury-in-fact for Article III standing. *Pierre*, 29 F.4th at

939; *see also Cooper v. Atl. Credit & Fin. Inc.*, 822 F. App'x 951, 955 (11th Cir. 2020).

### b.   Rule 12(b)(6) Arguments

Assuming, *arguendo*, the Court got it wrong and Plaintiff's emotional distress

alone suffices to grant her standing, her claims still fail as a matter of law.

As a background primer, the FDCPA generally prohibits debt collectors from

using "any false, deceptive, or misleading representation or means in connection with

the collection of any debt," 15 U.S.C. § 1692e, and "unfair or unconscionable means to

collect or attempt to collect any debt." *Id.* at § 1692f. The circumstances giving rise to an

alleged FDCPA violation are evaluated from the perspective of the least sophisticated

consumer. *Crawford v. LVNV Funding, LLC*, 758 F.3d 1254, 1258–59 (11th Cir. 2014). The

least sophisticated consumer "possess[es] a rudimentary amount of information about

the world and a willingness to read a collection notice with some care." *LeBlanc v.

Unifund CCR Partners*, 601 F.3d 1185, 1194 (11th Cir. 2010). That standard protects

"naïve consumers" and "prevents liability for bizarre or idiosyncratic interpretations of

collection notices by preserving a quotient of reasonableness." *Id.* (quotations omitted).

---

[9] Detrimental reliance requires a plaintiff show "that the defendant's actions caused her to change her position for the worse." *Dawkins v. Fulton Cnty. Gov't*, 733 F.3d 1084, 1089 (11th Cir. 2013).

Back to this case. Plaintiff alleges that Selene "used false representations and deceptive means to collect or attempt to collect the Debt; threatened action it did not intend to take; and/or threatened to take action that it could not legally take." [Doc. 11, ¶ 133]. Selene pushes back, saying "the notice repeatedly states that Selene will comply with all appliable laws in accelerating and foreclosing." [Doc. 17-1, p. 15 (citing [Doc. 11-1, p. 4])].

Selene's arguments find good footing in the Eleventh Circuit's unpublished case *Moore v. Seterus, Inc.*, 711 F. App'x 575, 580 (11th Cir. 2017). In *Moore*, the Circuit held that, like here,[10] "the demand letter said that foreclosure proceedings would not be commenced 'unless and until allowed by applicable law,' which indicated that the foreclosure proceedings would not begin contrary to the contract's terms." *Id.* So, the Circuit concluded, "as for the [plaintiffs'] claim that the least sophisticated consumer would read the letter to threaten immediate sale of their home without any notice, a careful reading of the entire letter shows that Seterus would not have foreclosed without providing what was required under the mortgage contract and state law." *Id.* Likewise, a reading of the entire GA Final Letter would also lead the least sophisticated

---

[10] As a reminder, the GA Final Letter stated that Selene, "*in accordance with* the referenced Security Deed and *applicable state laws*, provides you with final notice of the initiation of proceedings to exercise a power of sale . . . If you have not cured the default within thirty-five (35) days of this notice, Selene may accelerate the maturity date of the Note and declare all outstanding amounts under the Note immediately due and payable, *as permitted by applicable state and federal law*." [Doc. 11-1, pp. 4-5 (emphasis added)].

consumer to understand that Selene intended to follow all state and federal laws

regarding acceleration and foreclosure. *See id.*

Plaintiff's Response [Doc. 20] argues that this outcome is "foreclosed by *Cruz*,"

referring to the decision in *Cruz v. Selene Finance, LP*, No. 2:23-CV-14297, 2024 WL

4202093, at *7 (S.D. Fla. Aug. 21, 2024), *report and recommendation adopted*, No. 23-14297-

CIV, 2024 WL 4578890 (S.D. Fla. Oct. 25, 2024). This argument misses the mark for two

reasons. First, this Court is not bound to follow the decision of a sister district court.

*Fishman & Tobin, Inc. v. Tropical Shipping & Const. Co.*, 240 F.3d 956, 965 (11th Cir. 2001)

("[T]he district court cannot be said to be bound by a decision of one of its brother or

sister judges."). Second, the *Cruz* court relied heavily on the language of the letter (as

compared to the language used in *Moore*, for example). And, contrary to Plaintiff's

proposition that the *Cruz* letter and the GA Final Letter are "materially identical," [Doc.

20, p. 14], the letter at issue in *Cruz* **does** differ from the GA Final Letter in a significant

sense. Namely, in *Cruz*, the letter stated that

> The total amount you must pay to cure the default stated above must be
> received by 06/21/2023. Failure to cure the default on or before the date
> specified may result in acceleration of the sums secured by the Security
> Instrument, sale of the property and/or foreclosure by judicial proceeding
> and sale of the property.

Exhibit B, *Cruz v. Selene Fin., LP*, No. 2:23-cv-14297 (S.D. Fla. Dec. 12, 2023), ECF No. 15-

2. The corollary paragraph in the GA Final Letter reads:

> If you have not cured the default within thirty-five (35) days of this notice,
> Selene may accelerate the maturity date of the Note and declare all

outstanding amounts under the Note immediately due and payable, *as permitted by applicable state and federal law*. Your property that is collateral for the Note may then be scheduled for foreclosure sale in accordance with the terms of the Security Deed and applicable state laws.

[Doc. 11-1, p. 4 (emphasis added)].

Although seemingly minor, the distinction between the two letters matters because the *Cruz* court concluded that the letters in that case differed from the *Moore* letters since they didn't include the references to applicable law and failed "to include any language to clarify the timing of potential foreclosure proceedings." *Cruz*, 2024 WL 4202093, at *7 (referencing the differences between *Cruz*'s facts and *Moore*).

In the end, the Court is persuaded by the Eleventh Circuit's reasoning in *Moore*,[11] that "a careful reading of the entire letter shows that [Selene] would not have foreclosed without providing what was required under the mortgage contract and state law." *Moore*, 711 F. App'x at 580. Accordingly, Plaintiff failed to state a claim under § 1692e and the Court **DISMISSES** count I as to that section.[12]

---

[11] Other district courts reached the same conclusion. *Cf. Holder v. Statebridge Co., LLC*, No. 1:22-CV-00115-MLB-CMS, 2022 WL 2389324, at *9 (N.D. Ga. Apr. 7, 2022); *Savage v. Seterus, Inc.*, No. 2:20-CV-32-FTM-38NPM, 2020 WL 2219194, at *4 (M.D. Fla. May 7, 2020); *Barilla v. Seterus, Inc.*, No. 2:19-CV-46-FTM-38NPM, 2019 WL 6525945, at *4 (M.D. Fla. Dec. 4, 2019); *Fisher v. Seterus, Inc.*, No. 19-CV-01382 (MJD/HB), 2019 WL 5865605, at *6 (D. Minn. Oct. 21, 2019); *Martinez v. Integrated Cap. Recovery, LLC*, 513 F. Supp. 3d 1219, 1228 (E.D. Cal. 2021).

[12] Selene also argues that if the Court finds Plaintiff failed to state a claim under § 1692e, it should also find that—as a matter of law—Plaintiff failed to state a cause of action under § 1692f. The Court agrees. In *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1200 n.31 (11th Cir. 2010), the Eleventh Circuit found it "doubtful" that a letter not found to be a "threat to take an action that cannot legally be taken," could later be found to be "unfair" or "unconscionable." Even more, § 1692f is designed as a catch-all—covering conduct not otherwise covered by the FDCPA. *See Taylor v. Heath W. Williams, LLC*, 510 F. Supp. 2d 1206, 1217 (N.D. Ga. 2007) ("Section 1692f may provide a cause of action for conduct that is not specifically

## II.    GFBPA Claim

In addition to seeking dismissal of Plaintiff's FDCPA claims, Selene argues that her GFBPA claim fails as a matter of law. First, Selene argues that Plaintiff failed to allege detrimental reliance. [Doc. 17-1, p. 19]. Second, Selene argues that the GFBPA does not apply to loan servicing. [*Id.* at p. 20].

Not to replow old ground, but Plaintiff's Amended Complaint does not show detrimental reliance—which is required to sustain a claim under the GFBPA. *See Agnew v. Great Atl. & Pac. Tea Co.*, 502 S.E.2d 735, 737 (Ga. Ct. App. 1998); *Nottingham v. Houston Hosps., Inc.*, No. 5:18-CV-00182-TES, 2018 WL 4604023, at *5 (M.D. Ga. Sept. 25, 2018). Plaintiff's Response simply asserts that Selene "caused Plaintiff harm as a result of reliance on the misrepresentation," but does not flesh out that argument. [Doc. 20, p. 20]. But, as explained, detrimental reliance requires a plaintiff show "that the defendant's actions caused her to change her position for the worse." *Dawkins*, 733 F.3d at 1089. Borrowing money that you never use to pay a debt simply isn't detrimental reliance.

Past that, though, "[a]s construed by Georgia courts, it appears the FBPA does not apply to transactions that occur in regulated areas of activity, such as loan lending

---

listed in that section or any other provision of the FDCPA."). "Thus, a claim raised under § 1692f fails as a matter of law where the claim does not identify any misconduct beyond that which Plaintiff asserts violates other provisions of the FDCPA." *Osborn v. Whites & Assocs. Inc.*, No. 1:20-CV-02528-TWT-AJB, 2021 WL 6113656, at *10 (N.D. Ga. Nov. 16, 2021). Therefore, the Court **DISMISSES** Plaintiff's § 1692f claim, too.

and servicing." *Sheppard v. Bank of Am., NA*, 542 F. App'x 789, 793 (11th Cir. 2013).

That's because "[t]he General Assembly intended that the Georgia FBPA have a

restricted application only to the unregulated consumer marketplace and that [G]FBPA

not apply in regulated areas of activity, because regulatory agencies provide protection

or the ability to protect against the known evils in the area of the agency's expertise."

*Chancellor v. Gateway Lincoln-Mercury, Inc.*, 502 S.E.2d 799, 805 (Ga. Ct. App. 1998). That

means "[b]ecause the practice of mortgage lending and the process of initiating

foreclosure sales are highly regulated by other federal and state statutes, those activities

are not the proper basis of a claim brought under the [G]FBPA." *Bryant v. Selene Fin.,

LP*, No. 1:15-CV-4495-TWT-JSA, 2016 WL 4522681, at *6 (N.D. Ga. Aug. 1, 2016); *James v.

Bank of Am., N.A.*, 772 S.E.2d 812, 816 (Ga. Ct. App. 2015) ("And because residential

mortgage transactions are regulated by both state and federal law, the [G]FBPA does

not apply.").

Additionally, the GFBPA is not intended to apply to "allegedly deceptive acts or

practices that have no potential for harm to the general consuming public." *Sheppard*,

542 F. App'x at 793. As the Georgia Court of Appeals explained,

> When a 'consumer' suffers damage as the result of an unfair or deceptive
> act or practice which had or has potential impact solely upon him and
> which is not and could not be a source of damage to any other member of
> the consuming public, there is no public interest to be served by proceeding
> under the [G]FBPA, and the aggrieved party is relegated to pursuit of relief
> under other statutory or common law principles.

*Zeeman v. Black*, 273 S.E.2d 910, 915 (Ga. Ct. App. 1980). Plaintiff fights this conclusion by referencing *1st Nationwide Collection Agency, Inc. v. Werner*. 654 S.E.2d 428 (Ga. Ct. App. 2007). But, *1st Nationwide* relied on the conclusion that "[m]isrepresenting consumers' financial indebtedness *to others* or falsely reporting consumers' credit histories has a potential adverse effect on the consumer marketplace and the economy in general." *Id.* at 431 (emphasis added). That's because in *1st Nationwide*, the defendant publicly filed suit against the indebted plaintiff and "continued its collection campaign against" the plaintiff via other means. *Id.* at 458. Plaintiff asserts no comparable allegations here, so *1st Nationwide* simply doesn't help her case. Accordingly, since Plaintiff failed to show any detrimental reliance—and regardless, the GFPBA does not apply in this circumstance—Plaintiff's GFBPA claim is **DISMISSED**.

### III.   Notice-and-Cure Provision

Assuming, again, the Court got it wrong on both the standing and Rule 12(b)(6) points, the federal- and state-law claims are subject to dismissal for an independent reason: Plaintiff didn't follow the notice-and-cure provision outlined in the Security Deed. The Security Deed's notice-and-cure provision states:

> Neither Borrower nor Lender may commence, join, or be joined in any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other

party hereto a reasonable period after the giving of such notice to take corrective action.

[Doc. 11-3, p. 9].

Tracking that provision, Selene's argument is straightforward: Selene is an assignee of the servicing rights to the loan; therefore, it is entitled to enforce the notice-and-cure provision of the loan. [Doc. 17-1, p. 11]. And, Plaintiff's claims are "all based upon alleged improprieties in a notice that Selene was obligated to send to her under the Security Deed." [*Id.* at p. 13].

Obviously, Plaintiff sees things differently. Plaintiff contends that the "plain language of Plaintiff's Mortgage entirely detaches the rights and obligations of the Lender from any 'Loan Servicer' like Selene." [Doc. 20, p. 6]. Plaintiff also argues that "Plaintiff's claims do not arise under her Mortgage." [*Id.* at p. 10].

On this point, the Court finds convincing the Northern District of Illinois case *Milam v. Selene Finance, LP*, No. 24 C 317, 2024 WL 3455027, at *4 (N.D. Ill. July 18, 2024). In *Milam*, the district court concluded that "loan servicers are assignees of the Lender's servicing rights and thus able to enforce the notice and cure provision in the mortgage." *Id.* (collecting cases). The *Milam* court is not alone. *See, e.g., Giotta v. Ocwen Loan Servicing, LLC*, 706 F. App'x 421, 422 (9th Cir. 2017); *Salom v. Nationstar Mortg. LLC*, No. 24-CV-444-BJR, 2024 WL 4436972, at *4 (W.D. Wash. Oct. 7, 2024) (collecting cases); *Hill v. Nationstar Mortg. LLC*, No. 15-60106-CIV, 2015 WL 4478061, at *3 (S.D. Fla. July 2, 2015); *Charles v. Deutsche Bank Nat'l Tr. Co.*, No. 1:15-CV-21826-KMM, 2016 WL 950968,

at *4 (S.D. Fla. Mar. 14, 2016); *cf. Ferraro v. Wells Fargo N.A.*, No. 2:13-CV-632-FTM-38, 2013 WL 5357109, at *1 (M.D. Fla. Sept. 24, 2013); *Paschette v. Wells Fargo Bank, N.A.*, No. 6:11-CV-442-ORL-31, 2011 WL 2470314, at *1 (M.D. Fla. June 21, 2011); *see also Greer v. O'Dell*, 305 F.3d 1297, 1303 (11th Cir. 2002). Georgia law also recognizes that "a party may assign to another a contractual right to collect payment, including the right to sue to enforce the right." *Scott v. Cushman & Wakefield of Ga., Inc.*, 547 S.E.2d 794, 796 (Ga. Ct. App. 2001).

Even more, the current owner of Plaintiff's loan—U.S. Bank Trust National Association, *see* [Doc. 11, ¶ 78]—appointed Selene as power of attorney with rights to demand payment owed to U.S. Bank via necessary legal methods. *See* [Doc. 22-1, ¶ 1]. All of this means Selene acted as an agent of U.S. Bank, and "[a]lthough generally only parties to a contract may enforce its provisions, an exception to this rule exists for the agents of a party to a contract for actions taken within the scope of their agency relationship." *Costello v. Ocwen Loan Servicing, LLC*, No. 17-80885-CIV, 2018 WL 11368402, at *5 (S.D. Fla. Jan. 29, 2018).[13]

---

[13] Plaintiff's arguments regarding judicial estoppel are unavailing. As Selene lays out, judicial estoppel applies when a party takes divergent (and opposing) legal positions in different cases or situations. *See, e.g., Kennedy v. Stein*, No. 5:21-CV-00106-TES, 2021 WL 4509167, at *10 (M.D. Ga. Oct. 1, 2021). However, Selene is not taking a contrary position to its prior arguments that it is not a ***party*** to similar Security Deeds. It is simply arguing that it is an ***assignee*** of a party to the Security Deed. *See* [Doc. 22, p. 6]. Those legal positions can exist in peaceful harmony. *Cf. Kalar v. Bank of Am. Home Loans*, No. 16-CV-149-LM, 2017 WL 1377943, at *4 (D.N.H. Apr. 14, 2017).

And, Plaintiff's claims certainly arise from the Security Deed because "it is the mortgage contract itself that authorizes Selene . . . to give [Plaintiff] notice of possible foreclosure or acceleration." *Milam*, 2024 WL 3455027, at *4.[14] And, the claims generally "arise from the debt created by the note and the relationships which result from the note." *Miller v. Nw. Tr. Servs., Inc.*, No. CV-05-5043-RHW, 2005 WL 1711131, at *4 (E.D. Wash. July 20, 2005). Therefore, the Security Deed required Plaintiff to follow the notice-and-cure provision, and she failed to do so. Therefore, her claims may not be heard in this Court at this time, and her action must be dismissed. *See Charles*, 2016 WL 950968, at *4; *see also In re Colony Square Co.*, 843 F.2d 479, 481 (11th Cir. 1988); *Orkin Exterminating Co. v. Stevens*, 203 S.E.2d 587, 593 (Ga. Ct. App. 1973).

## CONCLUSION

Based upon the foregoing, the Court **GRANTS** Selene's Motion to Dismiss [Doc. 17] and **DISMISSES** Plaintiff's Amended Complaint [Doc. 11].[15] The Clerk is **DIRECTED** to **ENTER** Judgment and **CLOSE** this case.

**SO ORDERED**, this 2nd day of December, 2024.

S/ *Tilman E. Self, III*
_____
**TILMAN E. SELF, III, JUDGE**
**UNITED STATES DISTRICT COURT**

---

[14] *See also Necer v. PHH Mortg. Corp.*, No. 1:21-CV-01730-JLT-CDB, 2024 WL 3011182, at *8 (E.D. Cal. June 11, 2024) ("Thus claims, even statutory claims, that arise from the other party's actions pursuant to the Deed of Trust are subject to the Notice Provision").

[15] Since Plaintiff's individual claims fail, her putative class action claims fail, too. *See Henley v. Turner Broad. Sys., Inc.*, 267 F. Supp. 3d 1341, 1357 (N.D. Ga. 2017); *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974). Therefore, the Court **DISMISSES** Plaintiff's putative class action claims.